## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **R. ALEXANDER ACOSTA,**<br>*Secretary of Labor, U.S. Department*<br>*of Labor,* | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **CIVIL NO. JKB-17-0931** |
| | * | |
| **MEZCAL, INC. d/b/a MEZCAL**<br>**MEXICAN RESTAURANT & BAR,**<br>**et al.,** | * | |
| | * | |
| **Defendants.** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM

Plaintiff R. Alexander Acosta, Secretary of Labor, United States Department of Labor ("the Secretary"), filed suit against Mezcal, Inc., a corporation, d/b/a Mezcal Mexican Restaurant & Bar ("Mezcal"), and Carlos Ulloa, Mezcal's owner, alleging multiple violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA" or "the Act"). The Secretary seeks back wages, liquidated damages, and injunctive relief. 29 U.S.C. §§ 216(b), 217. Now pending before the Court is the Secretary's Amended Motion for Summary Judgment. (ECF No. 53.) No hearing is required. Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, the Secretary's Motion will be granted in part and denied in part.

### I.   Background

This lawsuit follows an investigation by the Department of Labor ("DOL") into possible violations of the FLSA's minimum wage, overtime, and recordkeeping requirements at Mezcal Restaurant and Bar. 29 U.S.C. §§ 206(a), 207(a)(1), 211(c); *see also id.* § 215(a)(2), (a)(5) (making

violations of the foregoing provisions illegal). The suit seeks to collect unpaid wages owed to sixty-two current and former employees listed in Schedule A of the Amended Complaint. (Am. Compl. at 7, ECF No. 6.) The Secretary alleged that Defendants violated the FLSA's minimum wage requirements by paying bartenders and servers less than minimum wage, failing to provide required notice, and operating an invalid tip pool. (*Id.* ¶ 6.) He also alleged that Defendants failed to pay the overtime premium to employees working in excess of forty hours per week and failed to keep required records of all employees' names, schedules, and pay. (*Id.* ¶¶ 7–8.) The Secretary alleged that these violations were willful, (*id.* ¶¶ 6–9), which would extend the statute of limitations to three years, 29 U.S.C. § 255(a), and sought liquidated damages and injunctive relief, in addition to back pay for Schedule A employees. (Am. Compl. at 4–5.)

## II.   *Legal Standard for Summary Judgment*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The moving party bears the burden of demonstrating the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the non-moving party, then a genuine dispute of material fact exists, and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). But, the "mere existence of a scintilla of evidence in support of the [non-moving party's] position" is insufficient. *Id.* at 252. The non-moving party may not rest upon the pleadings but instead must, by evidentiary showing, set out specific facts showing a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1). Facts and inferences must be viewed in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2009).

2

### III. Analysis

#### A. Evidentiary Challenges

Before addressing the substantive claims, the Court will consider Defendants' objections to certain evidence relied on by the Secretary. Defendants argue that several cited exhibits are inadmissible unsworn declarations, are not properly authenticated, and/or contain hearsay. (Opp'n M.S.J. at 5–7, ECF No. 54 (objecting to Plaintiff's Exhibits G, H, and I).)

The Court turns first to Plaintiff's Exhibit G, which purports to contain signed but unsworn statements from current and former Mezcal employees taken by a DOL investigator during the investigation. (Pl. Exh. G, ECF No. 53-9.) Under the 2010 amendment to Rule 56, exhibits need not be in admissible form to be considered at summary judgment, provided they could be put in admissible form at trial. Fed. R. Civ. P. 56(c)(2); *see also Kurland v. ACE Am. Ins. Co.*, Civ. No. JKB-15-2668, 2017 WL 354254, at *3 n.2 (D. Md. Jan. 23, 2017). The rule "contemplates a 'multi-step process by which a proponent may submit evidence, subject to objection . . . and an opportunity [after an objection] for the proponent to either authenticate the document or propose a method [of] doing so at trial.'" *Kurland*, 2017 WL 354254, at *3 n.2 (quoting *Ridgell v. Astrue*, Civ. No. DKC-10-3280, 2012 WL 707008, at *9 (D. Md. Mar. 2, 2012)) (first alteration in original).

Because the employee statements are not notarized or taken under seal, they are not self-authenticating under Federal Rule of Evidence 902, and Defendants argue that they do not comport with the statute under which an unsworn declaration may be treated as functionally the same as a sworn statement or oath. 28 U.S.C. § 1746; *see also* Fed. R. Evid. 902(10). Under section 1746, unsworn declarations must be in writing, signed, dated, and made "in substantially the following form: . . . 'I declare (or certify, verify or state), under penalty of perjury that the foregoing is true

and correct.'" § 1746(2). Courts construing the statute consider the requirements that an unsworn declaration be (1) avowed to be "true and correct" and (2) made "under penalty of perjury" to be independent elements. *See, e.g., In re World Trade Ctr. Disaster Litig.*, 722 F.3d 483, 488 (2d Cir. 2013) (per curiam); *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530–31 (5th Cir. 2005); *Pollock v. Pollock*, 154 F.3d 601, 611 n.20 (6th Cir. 1998); *United States v. Ericson*, Civ. No. 13-00551-LEK-KSC, 2014 WL 6749120, at *5 (D. Haw. Nov. 30, 2014).

The employee statements offered by the Secretary fall into two categories. Some "declare" certain facts "under the pains penalties [*sic*] of perjury." (Pl. Exh. G at 1–4, 9, 16–17.)[1] Others, appearing on DOL forms, declare that "the aforementioned is correct." (*Id.* at 5–8, 10–15.) None declares *both* that the statements are true *and* that they were made under penalty of perjury. The specific words required by section 1746 are not mere formalities; they are "indicia of truthfulness." *Davenport v. Bd. of Trs. of State Ctr. Cmty. Coll. Dist.*, 654 F. Supp. 2d 1073, 1083 (E.D. Cal. 2009). A bedrock presumption of our legal system is that the presence of certain words— words that assert the veracity of the statements made and accept the risk of a specific legal penalty for falsehoods—alert declarants to the gravity of their undertaking and thereby have a meaningful effect on truth-telling and reliability. Because none of the statements contains both required incantations, they do not conform with 28 U.S.C. § 1746.

In reply, the Secretary argues that the employee statements should nonetheless be considered under the business records exception to the hearsay rule, Fed. R. Evid. 803(6). He offers a declaration from the investigator who purportedly took the statements as authentication. (Reply at 3, ECF No. 63; O. Blanco Decl., ECF No. 63-1.) Documents properly admitted under the business records exception are treated as self-authenticating, but only if their compliance with

---

[1] Because the Court resolves the evidentiary objections on other grounds, the Court need not consider whether the grammatical abnormality of the phrase "pains penalties of perjury" would alone affect authentication.

4

the exception's requirements is "shown by a certification of the [record's] custodian or another qualified person that complies with a federal statute" or rule. Fed. R. Evid. 902(11); *see also* Fed. R. Evid. 803(6)(D). The Blanco declaration, however, suffers from the same deficiencies as the statements themselves—although executed under penalty of perjury, it is unsworn and lacks an avowal that the statements contained are true and correct. As such, it does not adhere to 28 U.S.C. § 1746 and cannot be used to authenticate the employee statements in Exhibit G.[2]

Defendants' remaining evidentiary objections concern failures to provide sworn affidavits authenticating two other exhibits: a list of names, purportedly of kitchen staff, alongside amounts and dates of payment, (Pl. Exh. H, ECF No. 53-10); and a sample of payroll records, (Pl. Exh. I, ECF No. 53-11). For the same reason that the Blanco declaration fails to authenticate the employee statements, it fails to authenticate these exhibits, as well. However, affidavits or declarations are not the only possible methods of authentication. Authentication only requires "evidence sufficient to support a finding that the item is what the proponent claims it is," which may include "distinctive characteristics" discernible from the face of the document, such as its appearance or contents. Fed. R. Evid. 901(a), (b)(4). Exhibit I includes a heading reading "Mezcal Inc.," a footer reading "Payroll by Payce," and columns containing employee information, dates, hours, and pay amounts, all of which is sufficient for the Court to find that the documents are what the Secretary claims: payroll records from three employees for pay periods between April 2014 and November 2015. Defendants, who are in the best position to dispute the accuracy or provenance of these records, raise no such substantive challenges to their reliability. The Court will therefore consider them.

---

[2]      Even if the Blanco declaration were acceptable as a custodial certification and the statements met all other requirements for business records under Rule 803(6), some of them appear to contain inadmissible hearsay. Fed. R. Evid. 805 (concerning "[h]earsay within hearsay"). The hearsay exception for party opponent statements includes statements by a party's "employee on a matter within the scope of that relationship" if made "while [the relationship] existed." Fed. R. Evid. 801(d)(2)(D). Several of the employee statements purport to be from *former* employees, no longer working at Mezcal at the time of their interviews with DOL. (*See* Pl. Exh. G at 1–4, 9, 16–17.)

Exhibit H, however, lacks such distinctive characteristics. It contains several pages of typed lists of first names, alongside dates, amounts, and handwritten annotations, but no heading or other marking identifying it on its face as a record kept by Defendants. The Court concludes that the Secretary failed to sufficiently authenticate Exhibit H, and it will not be considered.

The reasons for excluding Exhibits G and H from consideration may appear technical, but exclusion is nonetheless warranted. The Secretary bears the burden of proof in this case, a case in which the Government seeks to wield its disproportionate enforcement powers against private citizens. The Court will not make excuses for the Government when it improperly cuts corners in the discharge of those powers.[3]

### B. FLSA Liability

Considering only admissible evidence, the Court now turns to the claimed violations. "The FLSA is 'best understood as the minimum wage/maximum hour law,'" enacted to "'protect all covered workers from substandard wages and oppressive working hours.'" *U.S. Dep't of Labor v. Fire & Safety Investigation Consulting Servs., LLC*, 915 F.3d 227, 280 (4th Cir. 2019) (quoting *Trejo v. Ryman Hosp. Props., Inc.*, 795 F.3d 442, 446 (4th Cir. 2015)). Courts construe the Act "'liberally to apply to the furthest reaches consistent with congressional direction.'" *Roy v. Cty. of Lexington*, 141 F.3d 533, 540 (4th Cir. 1998) (quoting *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985)); *see also Purdham v. Fairfax Cty. Sch. Bd.*, 637 F.3d 421, 427 (4th Cir. 2011) ("The FLSA should be broadly interpreted and applied to effectuate its goals.").

It is undisputed that Defendant Mezcal is an employer subject to the Act's minimum wage, overtime, and recordkeeping provisions, and that those provisions apply to Schedule A employees.

---

[3]     The decision to exclude these exhibits from consideration on summary judgment rests solely on the grounds laid out here: the Secretary's failure to sufficiently authenticate the exhibits in response to Defendants' objections to the *form* in which they were presented. This ruling does not preclude the Secretary from offering the same substantive evidence in an admissible form at trial, subject to any specific objections Defendants may make at that time.

29 U.S.C. § 203(d), (s)(1). (Ans. ¶¶ 4–5, ECF No. 8; C. Ulloa Dep. at 16:21–17:16, 24:12–20, Pl.

Exh. A, ECF No. 53-3 (admitting engagement in commerce and that Mezcal's sales exceed the

minimum required by 29 U.S.C. § 203(s)(1)(A)(ii)); Opp'n M.S.J. at 5 (conceding employer status

for purpose of the pending motion).) *See also Speert v. Proficio Mortg. Ventures, LLC*, Civ. No.

JKB-10-718, 2011 WL 2417133, at *2 (D. Md. June 11, 2011) (finding stipulation to the statutory

text of § 203(s)(1) sufficient to support summary judgment). It is also undisputed that Defendant

Ulloa, as Mezcal's sole owner, is an employer subject to individual liability under the Act.

Individual employer status is determined under the "economic realities test," *id.* at *3 (citing

*Howard v. Malcolm*, 852 F.2d 101, 104–05 (4th Cir. 1988)), which considers authority to hire,

fire, and control employee hours, working conditions, pay, and records, *id.* (citing *Herman v. RSR

Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)). Ulloa admitted that he had such supervisory

and decision-making authority for Schedule A employees. (Ulloa Dep. at 9:2–17; Pl. First Req.

for Admission Nos. 4–7, Pl. Exh. B, ECF No. 53-4 (deemed admitted in ECF No. 20); *see also*

Opp'n M.S.J. at 5 (conceding individual employment status for the purpose of the motion).)

Accordingly, the Secretary has shown as a matter of law that Mezcal and Ulloa are

employers subject to the FLSA's recordkeeping, minimum wage, and overtime obligations with

respect to Schedule A employees.

### 1. Recordkeeping Violations

The FLSA requires that every covered employer "shall make, keep, and preserve . . .

records of the persons employed by him and of the wages, hours, and other conditions and practices

of employment maintained by him . . . ." 29 U.S.C. § 211(c). Regulations promulgated to enforce

this provision further clarify that employers must maintain the required records for "each employee

to whom [the minimum wage and overtime provisions] apply." 29 C.F.R. § 516.2(a). Among the

required records are "payroll or other records" recording the "[h]ours worked each workday and total hours worked each workweek." *Id.* § 516.2(a)(7). The Fourth Circuit considers employers' recordkeeping obligations to be "stringent" and "vital in ensuring employer compliance with the [Act]." *Fire & Safety Investigation Consulting Servs.*, 915 F.3d at 287 (citing *McFeeley v. Jackson St. Entm't, LLC*, 825 F.3d 235, 246 (4th Cir. 2016)).

Here, Ulloa admitted that hourly kitchen staff did not appear on payroll and that their hours and wages were not recorded. (Ulloa Dep. at 28:2–4, 29:15–30:6, 39:14–41:20, 48:6–50:16.) Payroll records from February 2016 showing current and former employees list no hourly kitchen workers at all. (Pl. Exh. M, ECF No. 53-15.) Defendants offer no alternative records—of identifying information, hours, or rates of pay—for these missing workers. The fact that other employees, such as servers or managers, do appear on payroll does not excuse Defendants' failure to keep records for kitchen workers. *See* 29 C.F.R. § 516.2(a) (requiring records for "each employee"). Even viewed in the light most favorable to Defendants, there is no dispute of fact that Defendants failed to keep all records required by 29 U.S.C. § 211(c), and the Secretary is therefore entitled to summary judgment on the recordkeeping claim.

### 2. *Overtime Violations*

The FLSA requires that, when working more than forty hours in a workweek, a covered employee must receive compensation "at a rate not less than one and one-half times the regular rate at which he [or she] is employed." 29 U.S.C. § 207(a)(1). Defendants conceded that "overtime violations occurred between December 2013 and February 2016." (Opp'n M.S.J. at 8 n.2.) Ulloa admitted to having failed to pay kitchen staff and servers overtime. (Ulloa Dep. at 54:16–21 ("Q: . . . Were you paying overtime to your cooks prior to the investigation? A: I was not. Q: Were you paying overtime to your bussers prior to the investigation? A: I was not."); *id.* 56:6–13 ("Q:

. . . Were [servers] getting the same rate per hour . . . even when they worked overtime? A: Yes.").)
The Court thus concludes as a matter of law that Defendants violated 29 U.S.C. § 207(a)(1).

Calculating the amount of back pay owed requires knowing the amount of undercompensated overtime hours and the rate at which those hours should have been compensated. To determine the proper overtime rate, courts must first determine the 'regular rate,' i.e., "the hourly rate that the employer pays the employee for the normal, nonovertime forty-hour workweek." *Flood v. New Hanover Cty.*, 125 F.3d 249, 251 (4th Cir. 1997); *see also* 29 U.S.C. § 207(e). The regular rate is the "keystone" of the overtime provision. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 429 (1945). "When determining the regular rate, courts are 'required to look beyond that which the parties have purported to do,' as the regular rate is an 'actual fact.'" *Fire & Safety Investigation Consulting Servs.*, 915 F.3d at 281 (quoting *149 Madison Ave. Corp. v. Asselta*, 331 U.S. 199, 204 (1947)); *see also* 29 C.F.R. § 778.108. The specific labels applied by employers to payments are not dispositive; the question is how employees were compensated in practice. *See Fire & Safety Investigation Consulting Servs.*, 915 F.3d at 283 (quoting *Youngerman-Reynolds Hardwood Co.*, 325 U.S. at 424–25) ("[T]he regular rate is 'a matter of mathematical computation, the result of which is unaffected by any designation of a contrary 'regular rate' in the wage contracts.'"). If employees were paid the regular rate for all hours, the back pay owed is "50% of the regular rate for the overtime hours worked." *Id.* at 285 (citing *Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 354–57 (4th Cir. 2011)).

The Court will consider evidence of back pay owed to kitchen staff, first. Where, as here, an employer kept inadequate records of hours worked, the evidentiary burden to establish the amount of back pay owed is reduced. In such circumstances, a plaintiff need only offer "sufficient evidence to show the amount and extent of [undercompensated] work as a matter of just and

reasonable inference." *Anderson v. Mount Clemens Pottery, Co.*, 328 U.S. 680, 687 (1946). If the plaintiff does so, the burden shifts to the employer to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687–88.

The Secretary's calculation of unpaid overtime owed to kitchen staff was based on an average of sixty-seven hours per workweek and biweekly compensation between $1,000 to $1,600. (M.S.J. Mem. at 18, ECF No. 53-2.) However, the evidence on which the Secretary relies to establish these average hours and rates is inadmissible for the purposes of this motion, as discussed *supra* Part II.A. (*See also* M.S.J. at 18. (citing Exhibits G and H).) Without admissible evidence in support of the Secretary's back pay calculations, the Court cannot conclude as a matter of just and reasonable inference what the regular rate for each kitchen employee on Schedule A was or how many hours they worked.[4] Viewed in the light most favorable to Defendants, questions of fact remain as to the amount of back pay owed to kitchen workers for overtime violations.

Next, the Court turns to evidence offered to show back pay owed to servers. Defendants' payroll records clearly show that the regular rate for servers was $3.63 per hour. (Pl. Exh. M.) The only question, then, is how many undercompensated overtime hours were worked by servers on Schedule A. The Secretary offers payroll samples for three servers showing eleven instances

---

[4]     Because the Secretary failed to carry his burden under *Mount Clemens*, the Court need not consider whether the evidence offered by Defendants to contest the average number of hours worked would be sufficient to raise a material question of fact on its own. However, the Court notes inconsistencies in Ulloa's own testimony about the regular schedule for kitchen staff. At one point, he described the regular kitchen hours as being "ten hours a day, five and a half days a week," or fifty-five hours per week. (Ulloa Dep. at 28:18–29:5.) Elsewhere, he described the regular schedule for a busser as five "full days," where a "full day" is "10 or 11 hours," plus a "six- or seven-hour shift" on the sixth day, which suggests fifty-six to sixty-two hours per workweek. (*Id.* at 43:1–9.) At yet another point, he described an average kitchen schedule as starting at "9:00 or 9:30 [a.m.]" and ending at "10:00 or 10:30, sometimes 11:00 [p.m.]," with a two-hour unpaid lunch break. (*Id.* at 28:9–17.) That description suggests that regular hours in the kitchen were between ten-and-a-half and twelve hours per day, or approximately fifty-eight to sixty-six hours per week. Defendants' opposition brief offers an average of fifty-five to sixty hours per week for kitchen workers. (Opp'n M.S.J. at 13.) The Court raises these discrepancies simply to underline the extent of factual disputes requiring further resolution before back pay can be adequately determined.

in which Mezcal paid the regular rate when servers worked more than eighty hours in a two-week pay period. (*See* J. Huffman Payroll, Pl. Exh. I, ECF No. 53-11, at 3 (showing 3.65 undercompensated overtime hours in the period ending July 28, 2014); A. Rivas Payroll, Pl. Exh. J, ECF No. 53-12, at 1 (showing 17.76 such hours across seven pay periods between January 12 and April 6, 2015); D. Randall Payroll, Pl. Exh. K, ECF No. 53-13 (showing 14.22 such hours across three pay periods between January 26 and February 23, 2015).) Eleven instances concerning three employees is simply an insufficient showing for the Court to assess underpayment of overtime for the dozens of servers listed on Schedule A.

Although courts have permitted representative evidence from a sample of employees to establish back pay under *Mount Clemens*, those cases involved employees for whom the employer failed to keep adequate records. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1046–47 (2016) (permitting the use of "a representative or statistical sample" where the employer failed to keep records); *Martin v. Deiriggi*, 985 F.2d 129, 132 (4th Cir. 1992) (concluding that, where "[t]he inability of the court to provide more detailed findings resulted from the unavailability of accurate and complete employee wage and hour records," the court would not require the Secretary to "identify with specificity each and every employee who was undercompensated and for exactly what time period"). Here, however, the Secretary does not contest that servers appeared on Mezcal's payroll or that those payroll records accurately reflected hours worked. In fact, the Secretary claims to have relied on those records to calculate the total underpayment of overtime to servers. (M.S.J. Mem. at 22–23 (citing payroll records as a basis for back pay calculations); *see also* Pl. Exh. M (providing as an exhibit Defendants' payroll records on which more than fifty

Schedule A employees appeared).) The "just and reasonable inference" standard under *Mount Clemens* does not apply to back pay owed to servers for overtime violations.[5]

The Court acknowledges that the Secretary provided a summary sheet, purportedly completed by a DOL investigator, tallying the hours and pay periods for which the Secretary claims unpaid overtime. (Reply Exh. 3, ECF No. 63-3.) But the Secretary offers no admissible evidence indicating the sources from which those numbers were drawn. *See supra* Part II.A (excluding unauthenticated evidence). Especially where, as here, the Secretary failed to properly authenticate much of its own evidence, and the Defendants have otherwise disputed the total calculation,[6] the unsupported assertion of the DOL as to the total amounts owed is not a sufficient basis on which to award back pay at summary judgment.

Accordingly, although the Secretary carried his burden to show that the Defendants violated the FLSA's overtime provision, § 207(a)(1), material questions of fact remain with respect to the amount of back pay owed to Schedule A employees.

### 3. *Minimum Wage Violations*

The FLSA provides that "[e]very employer shall pay" covered employees a minimum hourly wage of no less than $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). It is undisputed and apparent on the face of Defendants' payroll records that servers were paid an hourly rate of $3.63. (Pl. Exh. M.) Defendants' only argument is that they should be eligible for an exception to the

---

[5]     Even if the Secretary were permitted to proceed by way of representative evidence of undercompensated overtime for servers, it is not clear that the proffered records would be sufficient. In other cases, courts have drawn a "just and reasonable inference" as to the amount of back pay owed based on "a 'representative sample' of employees . . . as long as a representative from each relevant category of employees testifies." *Harold Levinson Assocs., Inc. v. Chao*, 37 F. App'x 19, 21 (2d Cir. 2002) (summary order) (citing *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 66–67 (2d Cir. 1997)). The Secretary offers no evidence that the three employees for whom payroll records were provided are representative of all hosts and servers on Schedule A.

[6]     In their opposition, Defendants challenged the maximum period of recovery under the statute of limitations. (Opp'n M.S.J. at 3–4.) The Secretary then revised the total back pay claim in his reply, appearing to concede that the initial calculation sought back pay beyond the maximum period of recovery. (Reply at 14–15.)

minimum wage rule, which allows employers of regularly tipped employees to pay a lower hourly

wage and claim a "tip credit" to make up the difference. 29 U.S.C. § 203(m)(2).

To be eligible for the tip credit, (1) an employer must inform the employee "of the

provisions of [the FLSA] subsection [governing the tip credit exception]," and (2) "all tips received

by such employee" must be "retained by the employee," unless the employee is part of a tip pool

"among employees who customarily and regularly receive tips." § 203(m)(2)(A); *see also*

*Trejo*, 795 F.3d at 447. Whether participating in a pool or not, in no circumstance may an employer

"keep any portion of employees' tips." § 203(m)(2)(B). Exceptions to the Act's prohibitions are

"narrowly construed," *U.S. Dep't of Labor v. N.C. Growers Ass'n, Inc.*, 377 F.3d 345, 350 (4th

Cir. 2004) (quoting *Monahan v. Cty. of Chesterfield*, 95 F.3d 1263, 1267 (4th Cir. 1996)), and the

employer bears the burden of demonstrating eligibility for the exception, *id.* (citing *Mitchell v. Ky.

Fin. Co.*, 359 U.S. 290, 291 (1959)). Failure to comply with either requirement renders an

employer ineligible to claim the credit, "'even if the employee received tips at least equivalent to

the minimum wage.'" *Prusin v. Canton's Pearls, LLC*, Civ. No. JKB-16-0605, 2017 WL 5126156,

at *3 (D. Md. Nov. 6, 2017) (quoting *Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d 670, 681

(D. Md. 2012)); *see also id.* (quoting *Richard v. Marriott Corp.*, 549 F.2d 303, 305 (4th Cir. 1977))

("The corollary [to the section 203(m) exception] seems obvious and unavoidable: if the employer

does not follow the command of the statute, he gets no credit.").

The Secretary claims both that Defendants' failed to provide the required notice and that

the tip pool was invalid. The Court concludes that the notice issue is dispositive. Federal rules

specify the content of the notice that must be provided for employers to claim the credit:

> [A]n employer is not eligible to take the tip credit unless it has
> informed its tipped employees in advance of the employer's use of
> the tip credit of the provisions of [section 203(m)], i.e.: The amount
> of the cash wage that is to be paid to the tipped employee by the

employer; the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and that the tip credit shall not apply to any employee who has not been informed of these requirements . . . .

29 C.F.R. § 531.59(b). [7] "It is not sufficient that employees 'be *aware of* the tip credit provisions. Rather, section 203(m) affirmatively requires employers to *inform* employees of the provisions contained in section 203(m).'" *Prusin,* 2017 WL 5126156, at *4 (quoting *Pedigo v. Austin Rumba, Inc.,* 722 F. Supp. 2d 714, 724 (W.D. Tex. 2010)) (emphasis in original).

Here, Defendants offer declarations from Ulloa and a manager, Isaias Gomez, to show compliance with the notice requirement. The relevant portions of those declarations state: (1) that Ulloa and Gomez "informed all new servers, bartenders, and bussers[,] . . . before they started working at Mezcal, that tips would be factored into their hourly wage to satisfy minimum wage requirements" and "what their hourly wage would be," (C. Ulloa Decl. ¶¶ 10–11, Def. Exh. B, ECF No. 54-6; I. Gomez Decl. ¶ 10, Def. Exh. F, ECF No. 54-12); (2) that all servers were required "to sign a form acknowledging the existence of the tip pool," (Ulloa Decl. ¶ 6; Gomez Decl. ¶ 5); and (3) that "[p]osters addressing federal and state labor laws, including the [FLSA], . . . have been prominently displayed in Mezcal's kitchen since . . . December 2013," (Ulloa Decl. ¶ 20). Defendants also offer statements from three employees confirming that, before they began work, they were "told that tips would be used to reach the minimum wage." (Def. Exh. C ¶ 8, ECF No. 54-9; Def. Exh. D ¶ 4, ECF No. 54-10; Def. Exh. E ¶ 8, ECF No. 54-11.)

---

[7]     The 2011 regulation requires "more detailed notice than courts had previously mandated." *Prusin,* 2017 WL 5126156, at *4 n.5 (quoting *Dorsey,* 888 F. Supp. 2d at 681). Although courts have refused to apply it retroactively, *see e.g., Dorsey,* 888 F. Supp. 2d at 684, it has been effective for the entirety of Mezcal's operations, making retroactivity a non-issue. (*See* Ulloa Dep. at 8:1–2 (stating that Mezcal opened in 2013).)

These declarations are insufficient to show that the content of whatever notice was provided affirmatively complied 29 C.F.R. § 531.59(b). Even viewed in the light most favorable to Defendants, the cited declarations are evidence only that tipped employees were informed (1) of their hourly wage, (2) that tips go towards fulfilling minimum wage, and (3) that the tip pool exists. This falls short of the specific requirements imposed by 29 C.F.R. § 531.59(b).[8] Defendants offer no evidence that tipped employees were informed of the amount of the tip credit claimed by Defendants, that the value of the credit could not exceed their actual tips, that they were entitled to keep all tips unless there was a valid tip pool in place, or that the employer could not claim the tip credit for anyone not provided with notice. *Id.* "At the summary judgment stage, the absence of evidence on an issue redounds to the detriment of the party who bears the burden of proof on that issue." *Perez v. Lorraine Enters., Inc.*, 769 F.3d 23, 30 (1st Cir. 2014). Defendants have the burden to show eligibility for the tip credit; their failure to offer evidence of the content of the notice they claim to have provided is fatal. The Court concludes as a matter of law that Defendants were ineligible to claim the tip credit and, therefore, their failure to pay servers minimum wage violated 29 U.S.C. § 206(a).[9]

The Court next turns to the amount of back pay the Secretary claims for minimum wage violations. The Secretary relies on similar evidence to show back pay owed for minimum wage and overtime violations: sample payroll records for some servers, (Rivas Payroll; Randall Payroll),

---

[8]     Defendants offer no details about the content of the posters, which makes them inadequate evidence of compliance even if a poster were an acceptable means of providing notice. *See Prusin*, 2017 WL 5126156 at *5, n.6 ("Although the Court is left to guess at what notices were included on the poster, many courts have rejected arguments that language included on a DOL poster is alone sufficient to satisfy the FLSA's tip credit notice requirements.").

[9]     The Secretary also argues that the tip pool was invalid, citing a statement by Ulloa to a DOL investigator that portions of the tip pool were used for business expenses and arguing that it was also distributed to ineligible employees. (M.S.J. Mem. at 9, 16.) Ulloa conceded having made the statement to the investigator, (*see* Pl. First Req. for Admission No. 14 (deemed admitted by ECF No. 20)), but now contests its accuracy, denying that tips were ever used for business expenses or that the pool was distributed to anyone other than regularly tipped employees. (Ulloa Dep. at 69:14–16; Ulloa Decl. ¶¶ 8–9.) Because Defendants failed to meet their burden of showing adequate notice, they would be ineligible to claim the credit even if the distribution of the top pool was FLSA-compliant.

and DOL's computation sheet tallying claimed back pay for each Schedule A employee, (Reply Exh. 3). For the same reasons such evidence was insufficient for the Court to determine back pay owed for unpaid overtime, it is insufficient to prove back pay owed for minimum wage violations. Therefore, although the Secretary established that Defendants violated the FLSA's minimum wage provision, § 206(a), material disputes of fact remain with respect to the amount of back pay owed.

### 4. *Willfulness and Statute of Limitations*

The standard statute of limitations for FLSA claims is two years, but it is extended to three years for willful violations. 29 U.S.C. § 255(a). The Secretary has the burden to prove willfulness, i.e., "that the employer 'knew or showed reckless disregard for the matter of whether its conduct'" violated the Act. *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 375 (4th Cir. 2011) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). "Negligent conduct is insufficient to show willfulness." *Desmond*, 630 F.3d at 358 (citing *Richland Shoe*, 486 U.S. at 135).

With respect to overtime, the Secretary points out that Defendants admitted to violations and that Ulloa conceded that he knew he was legally required to pay time-and-a-half for overtime hours. (M.S.J. Mem. at 19 (Ulloa Dep. at 45:21–46:8).) In response, Defendants claim Ulloa relied on Mezcal's payroll company, Payce Payroll, to properly pay employees when he submitted records reflecting overtime hours. (Opp'n M.S.J. at 14–15; Ulloa Dep. at 57:8–18.) Ulloa testified that he did not become aware that Payce was not paying the overtime premium until the investigation. (Ulloa Dep. at 55:1–14, 57:19–58:5.) He also stated that he took immediate steps to remedy the errors upon discovery, including by changing payroll providers. (Ulloa Decl. ¶ 17.)

Some courts have suggested that reasonable reliance on a third-party payroll provider or prompt action to correct violations may weigh against finding willfulness. *See Mould v. NJG Food Serv. Inc.*, 37 F. Supp. 3d 762, 772 (D. Md. 2014); *see also Souryavong v. Lacakawanna Cty.*, 872

16

F.3d 122, 127 (3d Cir. 2017). Because willfulness is often tied to questions of individual knowledge and motive, willfulness findings often require credibility determinations, which cannot be properly made at summary judgment. *See, e.g., Lyle v. Food Lion, Inc.*, 954 F.2d 984, 987 (4th Cir. 1992); *Deiriggi*, 985 F.2d at 137 (noting that willfulness findings were "tied closely to [the] trial court's witness credibility determinations"). In this case, Ulloa's testimony about his reliance on Payce, his lack of knowledge of the overtime violations, and his actions after discovery of the violations raise a question of fact as to willfulness.

However, these factual questions are only relevant to Defendants' treatment of employees on the payroll, like servers. Claimed reliance on Payce is irrelevant when considering failure to pay the overtime premium to kitchen workers, who Ulloa admitted were not included on the payroll. (Ulloa Dep. at 50:21–51:7.) When considering kitchen staff, Defendants' willfulness is clear: Ulloa admitted that he controlled their pay and schedules, (*id.* at 9:2–17), that he understood he was obligated to pay them time-and-a-half for overtime, (*id.* at 45:21–46:8), and that he failed to do so, (*id.* at 54:16–21). Defendants offer no evidence that could raise a material question of fact about the willfulness of this conduct. Accordingly, even viewing the facts in the light most favorable to Defendants, there is no genuine dispute that the failure to pay kitchen staff overtime was willful, and the statute of limitations is extended to three years for those claims.[10]

The Court next turns to the willfulness of minimum wage violations. Failure to provide notice in the form required by the statute and federal regulations, even if unreasonable, does not alone establish willfulness. *See, e.g., Mould*, 37 F. Supp. 3d at 773 (finding that Defendants' "seemingly cavalier approach to the law . . . [i]n availing themselves of the tip credit allowed by the FLSA but failing to determine whether any legal conditions needed to be satisfied prior to

---

[10]     The parties agree that the maximum recoverable period even for willful violations is April 6, 2014 through February 19, 2016. (Opp'n M.S.J. at 3–4; Reply at 14–15.)

taking [it]" was "unreasonable[] but falls short" of willfulness). Similarly, the Secretary's allegation that Defendants used tip pool money for ineligible expenses—even if proven—would not alone demonstrate willfulness. Willfulness requires a knowing or reckless disregard for legal obligations. *Desmond*, 630 F.3d at 358. A "good-faith but incorrect assumption that a pay plan complied with the FLSA in all respects" is not a willful violation. *Mould*, 37 F. Supp. 3d at 772 (quoting *Richland Shoe*, 486 U.S. at 135). Here, Defendants offer testimonial evidence that Ulloa consulted a certified public accountant about the legality of the tip pool prior to implementing it and that the accountant advised him of no problems, leading him to believe that it was FLSA-compliant. (Ulloa Decl. ¶¶ 5, 16; Ulloa Dep. at 65:14–67:2.) Viewed in the light most favorable to Defendants, such testimony presents a question of fact as to willfulness.

The Secretary's final argument is that willfulness should be inferred from Defendants' forgery of employee signatures on tip acknowledgement forms. (M.S.J. Mem. at 21.) Such misconduct, if proven, might suggest an attempt to conceal a known wrong, which could, in turn, suggest willfulness. But the Secretary offered no admissible evidence proving that Defendants did in fact falsify tip forms. Ulloa discussed the allegedly falsified forms during his deposition, but, at most, he acknowledged some unexplained discrepancies. (*See* Ulloa Dep. at 77:13–110:4.) Acknowledging irregularities is a far cry from establishing, as a matter of fact, that Defendants forged the forms. As such, the Secretary failed to prove that Defendants falsified the tip forms, and materials disputes of fact remain as to the willfulness of minimum wage violations.

### 5. *Liquidated Damages*

The FLSA permits recovery of both unpaid wages and "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Liquidated damages for minimum wage or overtime violations are "the norm." *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997). "Only where 'the

employer shows to the satisfaction of the court that the act or omission giving rise to [the violation] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation' of [the] FLSA may the court exercise its discretion to deny liquidated damages." *Id.* (citing 29 U.S.C. § 260). There is a "plain and substantial burden" on the employer to show good faith and reasonable grounds for believing pay practices to be FLSA-compliant. *Id.* (quoting *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 357 (4th Cir. 1994)); *see also Mountaire Farms, Inc.*, 650 F.3d at 375.

Although the standards are not identical, the same evidence supporting the finding that Defendants' failure to pay overtime to kitchen staff was willful is relevant to whether those violations were made in good faith or upon reasonable grounds. In particular, Defendants' failure to raise a material dispute of fact about the knowing or reckless nature of those violations similarly supports a finding that Defendants failed to meet their "plain and substantial burden" to persuade the court of their entitlement to the good-faith exception. *Mayhew*, 125 F.3d at 220 (quoting *Brinkley-Obu*, 36 F.3d at 357). Accordingly, the Court concludes as a matter of law that the Secretary is entitled to liquidated damages in an amount equal to the back pay owed to kitchen staff for overtime violations.

Turning to the remaining violations—failure to pay servers overtime or minimum wage—the Court concludes that, for the same reasons Defendants raised material questions of fact about the willfulness of those violations, they also raised material questions of fact about whether Ulloa's reliance on the certified public accountant and/or payroll company provided reasonable grounds to believe that Defendants' compensation of servers was in compliance with the FLSA. *See Mountaire Farms, Inc.*, 650 F.3d at 375. Accordingly, the Secretary has not shown entitlement to summary judgment on the question of liquidated damages for servers' claims.

19

### 6. *Injunctive Relief*

The Court next considers the propriety of injunctive relief. The court has "jurisdiction, for cause shown, to restrain violations of" the FLSA's minimum wage and overtime provisions. 29 U.S.C. § 217. The decision to grant an injunction is discretionary. *Id.* Courts "look at many factors[,] . . . including the employer's previous conduct, its current conduct, and the reliability of its promises of future compliance." *Metzler v. IBP, Inc.*, 127 F.3d 959, 963 (10th Cir. 1997); *see also Chao v. Va. Dep't of Transp.*, 157 F. Supp. 2d 681, 690 (E.D. Va. 2011) (citing similar tests applied by the First, Fifth, Sixth, Eighth, and Ninth Circuits), *rev'd in part on other grounds*, 291 F.3d 276 (4th Cir. 2002). Present compliance alone is not dispositive against an injunction. *E.g.*, *Marshall v. Van Matre*, 634 F.2d 1115, 1117 (8th Cir. 1980) ("Where the Secretary has established violations of the Act, the district court should ordinarily grant injunctive relief, even if the employer is in present compliance . . . ."); *Martin v. Funtime, Inc.*, 963 F.2d 110, 114 (6th Cir. 1992) (quoting *Brock v. Big Bear Market No. 3*, 825 F.2d 1381, 1383 (9th Cir. 1987)) ("'[C]urrent compliance alone, particularly when achieved by direct scrutiny of the government, is not a sufficient ground for denying injunctive relief.'"). In exercising its discretion, a district court must give "substantial weight to the fact that the Secretary seeks to vindicate a public, and not a private, right." *Funtime, Inc.*, 936 F.3d at 113 (quoting *Big Bear*, 825 F.2d at 1383).

Here, the Court concludes that the willfulness of Defendants' violation of the overtime provision with respect to kitchen workers is a relevant consideration. Furthermore, although Defendants claim to have remedied violations upon their discovery, many of the remedial actions taken appear to have involved changes to payroll practices. (*See, e.g.*, Ulloa Decl. ¶ 17.) Because hourly kitchen workers still did not appear on payroll as of February 2016, these actions are weak grounds for inferring a likelihood of current or future compliance with respect to kitchen workers.

Finally, insofar as the injunction would require nothing more than compliance with Defendants' pre-existing legal obligations, it imposes no hardship and is consistent with the public interest. *See Metzler*, 127 F.3d at 963; *Funtime, Inc.*, 963 F.2d at 114 (emphasizing the value of prospective injunctions which, by placing "the cost of noncompliance . . . on the employer," effectuate the remedial goals of the FLSA). Accordingly, the Court will grant the request for an order enjoining Defendants from violating overtime provisions with respect to their hourly kitchen staff.

With respect to the Secretary's claims concerning servers, however, the Court concludes that the material questions of fact about willfulness, good faith, and the scope of violations renders a decision on injunctive relief premature. *Cf. Hugler v. Dominion Granite & Marble, LLC*, Civ. No. 17cv229 (JCC/IDD), 2017 WL 2671300, at *2 (E.D. Va. June 21, 2017) (reserving a decision on the entitlement to injunctive relief until "the [factual] record is better developed").

## IV. Conclusion

For the foregoing reasons, an Order shall enter granting in part and denying in part the Secretary's Amended Motion for Summary Judgment. (ECF No. 53.) The Court concludes as a matter of law that Defendants violated the FLSA's minimum wage, overtime, and recordkeeping requirements with respect to Schedule A employees. 29 U.S.C. §§ 206(a), 207(a)(1), 211(c). The Court further concludes that violations of the overtime provision with respect to hourly kitchen workers listed on Schedule A were willful and lacked a good faith basis or reasonable grounds for believing Defendants were in compliance. 29 U.S.C. §§ 255(a), 260. However, material disputes of fact remain—and summary judgment will be denied—with respect to the willfulness of Defendant's failure to pay servers on Schedule A the required minimum wage and overtime premium, the Secretary's entitlement to liquidated damages or an injunction for those violations, and the total back pay owed to all employees for all violations.

21

In light of this ruling, the Court expects the parties to request a settlement conference before a magistrate judge to avoid any unnecessary cost and uncertainty of a trial on the remaining questions.

DATED this 20 day of June, 2019.

BY THE COURT:

James K. Bredar
Chief Judge